*885 TEXTO COMPLETO DE LA SENTENCIA
La recurrente Induveca, S.A. (Induveca) comparece ante nos solicitando que revoquemos la Resolución emitida por el Departamento de Estado de Puerto Rico (Departamento) el 15 de mayo de 2008 y notificada el 19 del mismo mes y año. Considerado su escrito y la comparecencia del Procurador General, resolvemos confirmar.
I
Induveca es una corporación organizada bajo las leyes de República Dominicana que se dedica a la producción y venta de productos refrigerados cárnicos y lácteos.
El 20 de septiembre de 2007, Induveca presentó en el Registro de Marcas y Nombres Comerciales del Departamento (Registro), una solicitud de registro para la marca “Sabor Sin Igual, Calidad Mundial (lema comercial)”, en la Clase Internacional 29 correspondiente a carnes y alimentos elaborados. Indicó que la marca se utilizaría para productos cárnicos (jamón, salami, salchichas y jamonetas) y que ésta no había sido usada en el comercio en Puerto Rico.
El Departamento emitió Resolución el 15 de mayo de 2008, notificada el 19 del mismo mes y año, mediante la cual denegó la solicitud de Induveca. El Departamento determinó que la marca “Sabor Sin Igual, Calidad Mundial (lema comercial)” está compuesta de “palabras que son de uso general y corriente en el comercio para identificar las cualidades o características del producto o servicio. Esta marca clasifica como descriptiva y/o genérica, y por ende no es susceptible de apropiación. ”
El 9 de junio de 2008, Induveca presentó una moción de reconsideración. En síntesis, adujo que la marca “Sabor Sin Igual, Calidad Mundial (lema comercial)” es una compuesta y sugestiva, la cual debía ser examinada en conjunto.
El 13 de junio de 2008 el Departamento emitió resolución en la que indicó que consideraría la misma. Transcurrido el término de noventa (90) días sin que el Departamento emitiera la resolución resolviendo definitivamente la moción de reconsideración, el 8 de octubre de 2008, Induveca acudió ante este Tribunal mediante recurso de revisión. Señaló que:

“I) Erró el Departamento en su análisis jurídico sobre Marcas Compuestas al determinar que “Sabor Sin Igual, Calidad Mundial” es una denominación descriptiva.

2) Erró el Departamento en su análisis jurídico sobre Marcas Compuestas al determinar que “Sabor Sin 
*886
Igual, Calidad Mundial” es una designación genérica.

El 22 de octubre de 2008, el Departamento solicitó se desestimara el recurso por falta de jurisdicción porque alegadamente fue presentado luego de transcurrido el término jurisdiccional de treinta (30) días que dispone el ordenamiento jurídico. El 3 de noviembre de 2008, Induveca presentó escrito en oposición a la moción de desestimación del Departamento.
Finalmente, el 24 de noviembre de 2008 le concedimos término al Procurador General para presentar su posición en cuanto al recurso y éste compareció en cumplimiento de nuestra orden. Perfeccionado el recurso, resolvemos.
II
Dado que el Departamento cuestiona nuestra jurisdicción para entrar en los méritos del recurso presentado ante nos, atendemos en primer lugar este planteamiento.
La Sección 3.15 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. see. 2165, dispone, en lo pertinente, que:

“[...]Si la agencia acoge la moción de reconsideración, pero deja de tomar alguna acción con relación a la moción dentro de los noventa (90) días de ésta haber sido radicada, perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días, salvo que la agencia, por justa causa y dentro de esos noventa (90) días, prorrogue el término para resolver por un período que no excederá de treinta (30) días adicionales. ”

Por otro lado, la Regla 68.1 de las de Procedimiento Civil, 32 L.P.R.A., Ap. Ill, R. 68.1, dispone que, en nuestra jurisdicción, todos los términos procesales se computan de la siguiente manera:

“En la computación de cualquier término prescrito o concedido por estas reglas, o por orden del tribunal o por cualquier estatuto aplicable, no se contará el día en que se realice el acto, evento o incumplimiento después del cual el término fijado empieza a correr. El último día del término así computado se incluirá siempre que no sea sábado, domingo ni día de fiesta legal, extendiéndose entonces el plazo hasta el fin del próximo día que no sea sábado, domingo ni día legalmente feriado. Cuando el plazo prescrito o concedido sea menor de siete (7) días, los sábados, domingos o días de fiesta legal intermedios se excluirán del cómputo. Medio día feriado se considerará como feriado en su totalidad. ”

El Departamento sostiene que este Tribunal no tiene jurisdicción para entender en el recurso porque Induveca presentó el mismo transcurrido un día de expirado el plazo jurisdiccional de 30 días. No le asiste la razón.
En el caso de autos, el Departamento emitió resolución el 13 de junio de 2008 indicando que consideraría la moción de reconsideración presentada por Induveca el 9 de junio de 2008.
Según la citada Sección 3.15 de la LPAU, el Departamento tenía 90 días a partir del 9 de junio de 2008 para considerarla. Sin embargo, el Departamento nunca resolvió dicha moción, por lo que perdió jurisdicción sobre el asunto el domingo, 7 de septiembre de 2008. El Departamento tenía para actuar hasta el próximo día laborable, es decir, el lunes 8 de septiembre de 2008. Regla 68.1 de las de Procedimiento Civil. A partir de esta fecha es que comienza a computarse el término jurisdiccional de 30 días para acudir en revisión ante este Tribunal. Dicho término venció el 8 de octubre de 2008, el mismo día que Induveca presentó su recurso de revisión administrativa.
*887 En consecuencia, concluimos que este Tribunal tiene jurisdicción para entender en este recurso, ya que fue presentado dentro del plazo jurisdiccional de 30 días, y declaramos no ha lugar la desestimación solicitada. Pasamos a considerar los méritos del recurso.
III
Como se sabe, la norma establecida es que las decisiones de los organismos administrativos se presumen correctas y gozan de deferencia por los tribunales. Rivera Concepción v. A.R.P.E., 152 D.P.R. 116, 123 (2000). La facultad revisora de los tribunales de las decisiones administrativas incluye las siguientes áreas: (1) concesión del remedio apropiado; (2) revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial; y (3) revisión de las conclusiones de derecho en su totalidad. T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70, 80-81 (1999).
“Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. ” See. 4.5 de la Ley de Procedimiento Administrativo Uniforme (LPAU), según enmendada, 3 L.P.R.A. see. 2175. Sin embargo, “[l]as conclusiones de derecho serán revisadas en todos sus aspectos por el tribunal. ” Id.
Respecto a las determinaciones de derecho de la agencia, el tribunal podrá revisarlas en todos sus aspectos, aunque observando un nivel de deferencia por el criterio de la agencia en aquella legislación que ésta implante. Véase, Rebollo Vda. de Liceaga v. Yiyi Motors, 161 D.P.R. 69, 77 (2004); P.R.T.C. v. J. Reg. Tel. de P.R., 151 D.P.R. 269, 282 (2000). Esta norma no presupone que el tribunal revisor pueda descartar libremente las interpretaciones o conclusiones de la agencia administrativa, sino que Ies dará deferencia en la medida que éstas sean razonables. Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 132 (1998). Por tanto, el tribunal revisor sostendrá las conclusiones de la agencia mientras las mismas sean cónsonas con el propósito legislativo y no sean arbitrarias, ilegales o irrazonables. Id.; T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R., a la pág. 80.
El presente caso trata, según hemos visto, de la denegatoria de una inscripción de marca en el Registro. Esta materia está reglamentada por la Ley de Marcas del Estado Libre Asociado de Puerto Rico, Ley Núm. 63 de 14 de agosto de 1991, 10 L.P.R.A. sees. 171 y ss. (Ley 63). Sin embargo, debemos recurrir a la legislación federal, conocida como Lanham Act, 15 U.S.C.A. sees. 1051 y ss., cuando se trata de marcas que también están inscritas en la Oficina de Marcas y Patentes de los Estados Unidos, United Status Patent and Trademark Office (USPTO), cuando se busca suplir los vacíos jurídicos de que adolece la Ley 63, toda vez que la ley federal fue su referencia legislativa, y cuando la Ley 63 contraviene alguna disposición de la legislación federal, en cuyo caso la Lanham Act ocupará parcialmente el campo. Arribas v. American Home, 165 D.P.R. 598, 608-611 (2005).
La Ley 63 define el término “marca” como “todo signo o medio que sirva para distinguir en el mercado productos o servicios de una persona, de productos o servicios de otra persona. El término incluye cualquier marca de fábrica, servicio, certificación y colectiva”. Art. 2(a), 10 L.P.R.A. see. 171 (a). Además, en dicha legislación se establece que una “marca de fábrica” es “[t]odo signo o medio que sirva para distinguir los productos de una persona de los de otra persona”. Art. 2(b), 10 L.P.R.A. see. 171 (b).
Mediante el registro de una marca se persigue proteger la calidad e individualidad de los productos o servicios que se ofrecen al público y al mismo tiempo proteger la reputación y la plusvalía (goodwill) de las empresas propietarias contra la competencia desleal. Posadas de P.R. v. Sands Hotel, 131 D.P.R. 21, 33 (1992), citando a Park'n Fly, Inc. v. Dollar Park and Fly, 469 U.S. 189, 198 (1984). Véase, además, Colgate-Palmolive v. Mistolín, 117 D.P.R. 313, 321 (1986).
A los fines de establecer lo que es susceptible de apropiación y protección como “marca de fábrica ” debemos examinar las categorías a que dicha cosa, palabra o frase pertenece. Las marcas bajo nuestra *888 legislación se dividen en cuatro categorías, a saber: 1) arbitrarias o imaginables; 2) sugestivas; 3) descriptivas; y 4) genéricas. Colgate-Palmolive v. Mistolín, 117 D.P.R., a las págs. 326-327. La Ley 63 no define expresamente esas categorías, pero en su Artículo 5, 10 L.P.R.A. sec. 171c., dispone que:

“(a) No se registrará ninguna marca que consista en:

(DU

(4) Palabras descriptivas de los productos o servicios en los cuales se usa.

(5) Palabras para indicar el género, la especie, la naturaleza, la calidad o la forma de los productos o servicios en los cuales se usa.

[...]

(b) Disponiéndose, que las marcas mencionadas en las cláusulas (4), (5), y (6) del inciso (a) de esta sección serán inscribibles si hubieran adquirido, para los productos o servicios para los cuales se solicite el registro, un carácter distintivo como consecuencia del uso que se ha hecho de la misma. ”

El Tribunal Supremo, por su parte, ha explicado el contenido de cada una de estas categorías. La marca arbitraria o imaginable es aquélla que no guarda relación con las características del producto o servicio que identifica la marca. Las marcas imaginables son aquellas palabras que se inventan los comerciantes con el propósito de utilizarlas como marcas. Por otro lado, el término arbitrario se refiere a palabras comunes u ordinarias que no sugieren o describen los servicios envueltos. Las marcas sugestivas son aquéllas que sugieren mediante un esfuerzo de la imaginación del consumidor alguna característica del producto. Tanto las marcas arbitrarias o imaginables, como las sugestivas, están sujetas a protección para el uso exclusivo del que las reclama. Posadas de P.R. v. Sands Hotel, 131 D.P.R., a la pág. 37.
Una marca descriptiva, la cual identifica características o cualidades de un producto o servicio, sólo es registrable si dicha marca ha adquirido un significado secundario en la mente del público. Posadas de Puerto Rico v. Sands Hotel, 131 D.P.R., a la pág. 38. El significado secundario o el “carácter distintivo” se obtiene “cuando el consumidor asocia la marca con un producto o servicio particular”. Id. Véase, además, Cooperativa Cafeteros v. Colón Colón, 91 D.P.R. 372, 387 (1964).
Por último, la marca genérica denomina el género o clase dentro del cual un producto en particular es un espécimen. Posadas de P.R. v. Sands Hotel, 131 D.P.R., a la pág. 38. El término genérico es aquél que el público consumidor conoce como nombre común del género y no de un producto en particular y no puede apropiarse por una fuente particular. En la jurisdicción federal, este tipo de marca no está protegida, aunque desarrolle un significado secundario en manos de quien reclama el derecho exclusivo sobre su uso. Id., citando a Colón v. Carlos Martínez, Inc., 112 D.P.R. 846 (1982). Notamos, sin embargo, que la Ley 63 permite su protección “si hubieran adquirido, para los productos o servicios para los cuales se solicite el registro, un carácter distintivo como consecuencia del uso que se ha hecho de la misma”. Art. 5 (b), 10 L.P.R.A. sec. 171c. (b).
Según lo anterior, en Puerto Rico, de ordinario, la marca genérica nunca estará protegida por el derecho marcario, a menos que desarrolle el carácter distintivo que le autoriza la Ley 63. La marca descriptiva, no obstante, adquiere protección si desarrolla un significado secundario (secondary meaning). Las marcas sugestivas y las marcas arbitrarias o imaginables, por ser inherentemente distintivas, adquieren protección inmediata del derecho marcario sin necesidad de desarrollar un significado secundario o carácter distintivo.
*889 En su recurso, Induveca sostiene que el Departamento incidió al concluir que “Sabor Sin Igual, Calidad Mundial” es una marca descriptiva y genérica. Esto es, compuesta por palabras que son de uso general y corriente en el comercio para identificar las cualidades o características del producto o servicio. Además, aduce que la norma correcta de interpretación exige que dicha marca sea evaluada como un todo y no a base de sus componentes individuales. En ese sentido, arguye que la marca no identifica directamente ninguna característica del producto, sino que sugiere el efecto que tendrá en las personas que lo utilicen, por lo que la marca “Sabor Sin Igual, Calidad Mundial" es una compuesta y sugestiva. No le asiste la razón.
Según indicado, una marca genérica es aquélla que denomina el género o clase dentro del cual un producto en particular es un espécimen. Posadas de P.R. v. Sands Hotel, 131 D.P.R., a la pág. 38. “A mark is ‘generic’ if it is the common name for a class of products rather than the name of the individualized product." J & J Snack Foods Corp. v. Earthgrains Co., 220 F. Supp. 2d 358, 375 (N.J. 2002). A esos efectos, nos señala J. Thomas McCarthy que “[gjeneric [m]ark communicates information about nature or class of article or service and therefore can never become service or trademark”. J. T. McCarthy, Trademarks and Unfair Competition, 2da ed., 1984, Sec. 15.1 (c). Así pues, un término genérico nunca gozará de la protección del derecho marcario, en vista de que no puede impedirle a los competidores del mercado que lo utilicen en artículos similares. J & J Snack Foods Corp. v. Earthgrains Co., 220 F. Supp. 2d, a la pág. 375.
La determinación de si una marca se ha convertido en genérica se hace a base del significado primario que le da la mayoría de los consumidores a determinada marca de un producto o servicio. Posadas de P.R. v. Sands Hotel, 131 D.P.R., a la pág. 39. [1] La categorización de una palabra o frase en derecho marcario se examina a base de la relación entre el producto o servicio y la marca en cuestión, y a base del mercado a quien va dirigido el producto. Una palabra puede ser genérica para determinado producto o servicio por determinar su género, mas puede ser descriptiva o arbitraria para otros. Puede que una palabra sea genérica para determinado mercado, mas no para otros.” Posadas de P.R. v. Sands Hotel, 131 D.P.R., a la pág. 40.
Para determinar si un término es genérico, se ha desarrollado un análisis por la vía jurisprudencial que requiere contestar ¿quién eres? y ¿qué eres?, conocido comúnmente como el “who are you/what are you test”. “A mark answers the buyer’s questions ‘Who are you?’ ‘Where do you come from?’ ‘Who vouches for you?’ But the [generic] name of the product answers the question ‘What are you?’” Filipino Yellow Pages v. Asian Journal Publications, Inc., 198 F. 3d 1143, 1147 (9no Cir. 1999); McCarthy, op. cit., 3ra ed., 1992, Sec. 12.1. Bajo este análisis, “if the primary significance of the trademark is to describe the type of product rather than the producer, the trademark [is] a generic term and [cannot be] a valid trademark. ” Id. Así pues, el término genérico responde la primera interrogante, ¿qué eres?
Por último, una marca compuesta es aquélla que combina palabras que pueden ser utilizadas de forma independiente. Federation v. Ebel, 172 D.P.R. _ (2007), 2008 J.T.S. 4, a la pág. 556. Cuando se trata de una marca compuesta, es necesario examinarla en su totalidad para determinar su clasificación, aunque los términos pueden analizarse por separado, siempre que la determinación final esté basada en el conjunto de la marca. Great Southern Bank v. First Southern Bank, 625 So. 2d 463, 469. Véase, además, McCarthy, supra, 3ra ed., Sec. 11.10.
Según señala el Tribunal Supremo en Posadas de P.R. v. Sands Hotel, 131 D.P.R., a la pág. 41, el diccionario resulta de gran ayuda, ya que constituye evidencia apropiada y relevante para determinar el significado primario de un término. Véase, además, Filipino Yellow Pages v. Asian Journal Publications, Inc., 198 F. 3d, a la pág. 1148. El Diccionario de la Lengua Española, 22da ed., Real Academia Española, 2001, define los siguientes términos: 1) “sabor" sensación que ciertos cuerpos producen en el órgano del gusto o impresión que algo produce en el ánimo; 2) “sin igual", que no tiene igual o semejante; [2] 3) “calidad!’ propiedad o conjunto de propiedades inherentes a algo, que permiten juzgar su valor; y 4) “mundial” perteneciente o relativo a todo el mundo.
*890 Como vemos, las palabras “sabor”, “sin igual”, “calidad” y “mundial” son términos genéricos si se consideran por separado. Éstos simplemente describen el producto de Induveca, así como productos similares que pertenezcan a ese género. Por consiguiente, no pueden ser objetos de apropiación individual por parte de una sola entidad como pretende hacer Induveca.
Induveca plantea, además, que la frase “Sabor Sin Igual, Calidad Mundial”, vista en su totalidad, es distintiva con relación a los productos que identifica con esa marca. La jurisprudencia federal ha establecido que “a combination of two generic words is also generic, unless the combination is a ‘deviation from natural usage’ or an unusual unitary combination’ ”. Filipino Yellow Pages v. Asian Journal Publications, Inc., 198 F. 3d, a la pág. 1148.
Consideramos que la unión de los términos en controversia no le adjudica a la frase “Sabor Sin Igual, Calidad Mundial", una característica distintiva a su producto en particular. Son términos inherentes al mercado en el que el mismo se comercializaría. Siendo así, de registrarse dicha frase como marca de fábrica particular, según propuesta por Induveca, estaría vedado para la competencia poder utilizar tales términos, corrientes y genéricos dentro de la industria, para mercadear productos competitivos afectando la competencia en el mercado, situación que la Ley 63 busca evitar. Por tanto, concluimos que la frase vista en su totalidad es genérica.
Por otro lado, Induveca plantea que la frase “Sabor Sin Igual, Calidad Mundial” es sugestiva. Como ya indicamos, una marca sugestiva es aquélla que sugiere mediante un esfuerzo de la imaginación del consumidor alguna característica del producto, Posadas de P.R. v. Sands Hotel, 131 D.P.R., a la pág. 38, mientras que una marca descriptiva meramente describe una característica o ingrediente del artículo al cual se refiere. Colgate-Palmolive v. Mistolín, 117 D.P.R., a la pág. 326.
El Tribunal Supremo ha señalado que, para diferenciar un término descriptivo de uno sugestivo se deben considerar tres factores. El primero de ellos es el grado de imaginación. Según este criterio, la clasificación depende del grado de imaginación que debe utilizar una persona promedio para obtener, a través del término, alguna descripción del producto. Así, mientras un término descriptivo directa y claramente transmite información sobre los ingredientes, cualidades y características del producto, el sugestivo sólo sugiere esas características. Como segundo, debe considerarse el criterio de necesidad de los competidores. Bajo este análisis, la calificación depende del grado en que los competidores necesitan del término para describir y anunciar sus propios productos. Finalmente en el tercero, es necesario evaluar el uso por los competidores. Este enfoque se centra en el grado en que otros competidores han utilizado el término respecto a mercancía similar. Colgate-Palmolive v. Mistolín, 117 D.P.R., a la pág. 327.
En la esfera federal, la jurisprudencia ha señalado que para determinar si una marca es sugestiva hay que considerar cinco criterios, a saber:

“(1) the level of imagination, thought or perception required to reach a conclusion as to the nature of the goods;

(2) the likelihood that competitors will need to use the term in connection with their goods;

(3) the extent to which other sellers have used the mark on similar merchandise;

(4) the likelihood that the mark will conjure up other purely arbitrary connotations separate from what the mark conveys about the product; and

(5) the probability that consumers will regard the mark as a symbol of origin or as self laudatory. ” J & J Snack *891 Foods Corp. v. Earthgrains Co., 220 F. Supp. 2d, a lapág. 378.
Al examinar las palabras que en su conjunto forman la frase "Sabor Sin Igual, Calidad Mundial’’, surge claramente que no estamos ante una marca sugestiva. Dicha frase no necesita cierta imaginación para relacionarla con el producto de Induveca. Cualquier consumidor se percataría de que la idea que se quiere transmitir es la cualidad o característica de un producto. Entendemos que la frase “Sabor Sin Igual, Calidad Mundial” identifica al producto y sus cualidades, que en este caso es un alimento. Por lo tanto, la frase propuesta es descriptiva y no susceptible de apropiación particular.
Por otro lado, Induveca plantea que la USPTO aprobó la solicitud de registro que la recurrente presentó para la marca “Caserío Sabor Sin Igual” y que, por ende, la frase “Sabor Sin Igual, Calidad Mundial” es aceptable como marca en Puerto Rico.
La norma establecida en Arribas v. American Home, supra, por el Tribunal Supremo, es una clara en cuanto a que el registro federal de una marca constituye evidencia prima facie de que dicho registro es válido, que la marca pertenece al registrante federal y que éste tiene derecho al uso exclusivo de la misma. Véase además, 15 U.S.C.A. see. 1115 (a).
No obstante, debemos recordar que en la mayoría de los Estados se permite algún tipo de registro de las marcas utilizadas dentro de ese Estado. Para ello, los Estados establecen sus propias normas que pueden coexistir con la ley federal de marcas en tanto y en cuanto no la contravengan. Claro está, de existir contradicción entre el estatuto federal y el estatal, opera de forma automática una ocupación parcial del campo y se invalida el efecto de la disposición estatal que conflige con los preceptos de la ley federal. Véase, Arribas v. American Home, 165 D.P. R., a la pág. 611; McCarthy, op. cit., 4ta ed., 1996, See. 22:1.
Por último, el Tribunal de Distrito de los Estados Unidos resolvió en Rheingold Breweries, Inc. v. Antilles Breweries, Inc., 353 F. Supp. 877, 880 (D.C.P.R. 1973):

“Registration of a trademark in the United Status Patent Office does not per se extend the rights and protection it affords a registrant, to strictly local trade within the Commonwealth of Puerto Rico, where local legislation provides its own and valid system of registration of trademarks to afford such rights and protection in trade within the territorial limits of said Commonwealth. ”

Según vemos, reconocer un derecho de inscripción por el hecho de que la marca hubiese sido registrada por el USPTO no crea una obligación de inscripción en Puerto Rico. Por tanto, Induveca no puede pretender dar un significado diferente como el que sería establecer una obligatoriedad de registro a nivel estatal por la mera razón de haber sido obtenido en la esfera federal.
De todos modos, consideramos que dicha situación no es el caso ante nos. Induveca pretende inscribir la frase “Sabor Sin Igual, Calidad Mundial” en Puerto Rico amparándose en el hecho de que la USPTO aprobó el registro de la marca “Caserío, Sabor Sin Igual”. Sin embargo, ésta no es la misma que Induveca pretende inscribir en Puerto Rico. El Departamento concluyó correctamente que la marca “Sabor Sin Igual, Calidad Mundial” constituye una marca descriptiva y genérica cuya inscripción en Puerto Rico está prohibida por ley. Al así hacerlo actuó conforme a derecho.
En resumen, no hemos encontrado nada en el expediente que demuestre que la determinación del Departamento fuera una caprichosa, arbitraria o errónea en derecho. Tampoco incidió el Departamento al denegar la solicitud de inscripción de la marca “Sabor Sin Igual, Calidad Mundial" a favor de Induveca. Por tanto, resolvemos que no se cometieron los errores señalados.
*892 IV
Por los fundamentos expuestos, se dicta sentencia confirmando la Resolución recurrida.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Leda. María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 35

1. “The primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used. ” 15 U.S.C.A. sec. 1064.

2. Definición disponible en el portal cibernético de la Real Academia Española, http://www.rae.es.